UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RWS FINANCIAL GROUP, LLC,

          Plaintiff,           Case Number 24-11167

v.           Honorable David M. Lawson

AHLERS & STOLL, PC, PAMELA AHLERS,
and CAROLYN STOLL,

          Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANT AHLERS'S MOTON TO DISMISS

After the breakdown of negotiations to purchase the defendants' financial planning business in Texas, plaintiff RWS Financial Group, LLC filed this case in this district alleging various theories of misrepresentation and contract breaches. Defendant Pamela Ahlers — the only defendant served so far — responded with a motion to dismiss the case for want of personal jurisdiction. She also contends that the complaint fails to state viable claims. The Court heard oral argument on the motion on June 11, 2024. The plaintiff has not shown that Ahlers purposefully availed herself of the privilege of doing business in Michigan, and therefore it is not reasonable for this Court to exercise personal jurisdiction over her. The Court will grant her motion and dismiss the case against her without prejudice.

I.

The following facts are taken from the complaint and Pamela Ahlers's declaration. Plaintiff RWS Financial Group, LLC is a Michigan limited liability company based in Farmington Hills. Comprised of more than 30 financial advisors representing 15 offices, the company provides its clients insurance, tax, and other financial services.

Defendant Ahlers & Stoll began as a partnership located near Houston, Texas and also provides financial planning, investment, accounting, and tax services. It was formed in 1984 by defendants Pamela Ahlers and Carolyn Stoll. In 1989, the partners formalized this arrangement as a professional corporation.

In her declaration, Ahlers states that in approximately 2019 or 2020, Stoll expressed interest in retiring and sought to cash out her interest in the partnership. During Ahlers's and Stoll's discussions about how to proceed, an acquaintance recommended that Ahlers contact plaintiff RWS to obtain an appraisal of their business and advice regarding succession planning. In December of 2020, she contacted RWS officials for that purpose, and it agreed to prepare a valuation of the business.

About a month later, in January of 2021, the character of the relationship changed. Ahlers says that RWS presented her an unsolicited offer to purchase the business. The parties signed a Letter of Intent for the deal on February 8, 2021, which contemplated that the transaction would be completed by October 1, 2021. According to the Letter of Intent attached to the declaration, RWS was to purchase the business, and Ahlers and Stoll were to be retained for months after the merger date "with the primary goal being to secure a successful transaction through the introduction of RWS to the Clients of [Ahlers & Stoll, PC]." Letter of Intent, ECF No. 6-1, PageID.108.

According to the complaint, the defendants manifested an interest in merging. Relying on this interest, RWS took steps to prepare for the transaction by conducting financial analyses, reviewing company documents, and conducting in-person and remote meetings. RWS says that it incurred significant expenses with these efforts consisting of legal costs, travel expenses, and job posting fees. It also says that it had to forgo other business opportunities.

The deal ultimately did not come to fruition. According to the complaint, the defendants' interest in merging proved false, causing damage to the plaintiff's business.

For her part, Ahlers avers that after executing the Letter of Intent, representatives of RWS traveled to Ahlers & Stoll's offices in Texas on occasions in February, April, May, and June of 2021. Ahlers retained counsel in Texas to represent her in the negotiations. Although these negotiations persisted for months, she states that the parties never reached an agreement about the final terms of a sale, and talks ceased around July of 2022.

Ahlers states that she has been to Michigan on only two occasions in the past twenty years. The first, in June of 2021, occurred when Ahlers and her husband drove to a car show in Indiana. During the trip, she visited RWS's office in Detroit for less than a day. She characterizes the visit as "informal" and says it took place because she was going to be in the vicinity and "was interested in seeing RWS's office." Decl. of Pamela Ahlers ¶ 18, ECF No. 6-1, PageID.104. Nothing in the record suggests that any negotiations occurred during that visit. The second trip occurred on June 22, 2022 when she traveled to Detroit to meet with RWS representatives "for a more thorough tour of the business and to learn more about how it conducts business and which products it provides to clients." *Id.* ¶ 19. She returned to Texas two days later.

The plaintiff filed this action in the Oakland County, Michigan circuit court on March 26, 2024 against Ahlers and Stoll individually, as well as Ahlers & Stoll, PC. The complaint includes seven counts: promissory estoppel (Count I), fraudulent inducement (Count II), intentional misrepresentation (Count III), negligent misrepresentation (Count IV), unjust enrichment (Count V), breach of contract (Count VI), and a count styled as "Breach of Contract — Implied Duty of Good Faith and Fair Dealing" (Count VII). The defendants all consented to the removal of the case to this Court on May 1, 2024, but defendant Pamela Ahlers presently is

the only defendant to have been served with process and appeared. She promptly filed a motion to dismiss the complaint for want of personal jurisdiction and for failing to state a claim.

II.

Pamela Ahlers argues that she is not subject to the personal jurisdiction of this Court. She points out that the complaint does not make any allegations of continuous, systematic contacts necessary to confer general jurisdiction, and she maintains that the contacts she has had with Michigan — which consist primarily of electronic communications and brief visits to RWS's offices — are insufficient to show purposeful availment. Her visits to Michigan are not themselves dispositive, she argues, because the first was merely a short side-trip that occurred after the parties had signed the Letter of Intent indicating that there were no binding promises between them, and the second occurred immediately before she terminated further discussions about a merger.

RWS believes that Ahlers maintained sufficient minimum contacts with Michigan because she selected RWS to appraise Ahlers & Stoll, she signed a letter of intent in February of 2021 in anticipation of a merger, she negotiated with RWS for many months, and she visited its offices in Michigan. RWS asserts that all of its claims are related to Ahlers's participation in the merger negotiations and that it is reasonable for the Court to exercise jurisdiction because Michigan has an interest in protecting companies located within the state, it has an interest in obtaining relief locally, and the burden on the defendant of litigating here is not so great because she already has negotiated with the defendant in Michigan over several years.

The plaintiff has the burden of establishing personal jurisdiction, either through its pleaded allegations or by meeting a more documented demonstration with evidence of its own. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). When, as here, there is no evidentiary hearing, the plaintiff's

burden is "relatively slight." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). The Court will view "the pleadings and affidavits submitted . . . in a light most favorable to the plaintiff." *Air Prods. & Controls, Inc. v. Safetech Int'l., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). A plaintiff "can meet this burden by 'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987)).

Once the plaintiff has made out a *prima facie* case, the burden shifts to the defendant, "whose motion to dismiss must be properly supported with evidence," such as a declaration. *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citing *Theunissen*, 935 F.2d at 1458). The burden then returns to the plaintiff "who may no longer 'stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.'" *Ibid.*

In a case such as this where subject matter jurisdiction is based on diversity of citizenship, federal courts look to state law to determine personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1); *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021). If a Michigan court would have jurisdiction over a defendant, so would a federal district court sitting in this state. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (explaining that "[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons").

Michigan law recognizes two bases for personal jurisdiction over individuals: general, Mich. Comp. Laws § 600.701, and specific (called "limited personal jurisdiction" in state law parlance), Mich. Comp. Laws § 600.705. General jurisdiction exists when the defendant's affiliations with the forum state are "so continuous and systematic as to render the defendant

essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quotation marks omitted). RWS does not contend that Ahlers is subject to the general jurisdiction of Michigan.

"'Specific' or 'case-linked' jurisdiction 'depends on an affiliation between the forum and the underlying controversy.'" *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014) (quoting *Goodyear*, 564 U.S. at 919). To satisfy the Due Process Clause, the Court must find that "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Id.* at 284. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919).

Michigan's so-called Long Arm statute defines the scope of its limited personal jurisdiction. But "[t]he Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 571 U.S. at 283. It has been said that Michigan interprets its Long Arm statute to allow personal jurisdiction to extend to the limits imposed by the federal constitution. *See Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992). But the Sixth Circuit recently has called into question that reading of Michigan law. *See Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 664 (6th Cir. 2023) (opining that "Michigan's interpretation of its long-arm statute requires a separate analysis from the Due Process Clause") (relying on *Green v. Wilson*, 455 Mich. 342, 565 N.W. 2d 813 (1997)). The *Sullivan* court held that "*Green* requires that we conduct two separate inquiries when determining whether a court sitting in Michigan has personal jurisdiction over a defendant." *Id.* at 666.

A.

Michigan's Long Arm statute provides the following list of activities that will enable a court to exercise personal jurisdiction over an individual:

(1) The transaction of any business within the state.

(2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of real or tangible personal property situated within the state.

(4) Contracting to insure a person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.

(6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.

(7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.

Mich. Comp. Laws § 600.705. The only provisions that arguably apply are the first two sections, with the second more apt than the first.

As for section 1, Michigan courts have noted that the statute's use of the word "any" means the provision is to be interpreted broadly, "to "include[ ] 'each' and 'every.' It comprehends 'the slightest.'" *Yoost v. Caspari*, 295 Mich. App. 209, 229, 813 N.W.2d 783, 795 (2012) (quoting *Sifers v. Horen*, 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971)); *see also AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) ("Section 600.705(1) is satisfied by 'the slightest act of business in Michigan.'" (quotation omitted)).

Nonetheless, the allegations in the complaint, even considered with the defendant's declaration, do not establish that this portion of the Long Arm statute covers the defendant's

alleged conduct. The complaint itself offers few specific details about Ahlers's role. It appears undisputed that Ahlers and her partner reached out to RWS in Michigan to seek an appraisal of their business. However, the circumstances changed when RWS presented an unsolicited offer to the defendants to purchase their financial services business. That transaction took place entirely in Texas. RWS suggested at oral argument that the purchase offer was a natural outgrowth of the appraisal transaction, but there is no evidence that any such thing occurred in this case or that the industry custom supported that kind of natural evolution. It is true that Ahlers acknowledged in her declaration that she visited Michigan on two occasions, both of which included visits to the plaintiff's offices. Decl. of Pamela Ahlers ¶¶ 18-19, ECF No. 6-1, PageID.104-05. But neither side has offered any evidence that these visits included discussions about the proposed merger or anything else about the businesses. In other words, there is no evidence that the visits involved "conducting any business; negotiation; [or] management." *Transaction*, *Black's Law Dictionary* (4th ed. print 1957); *see also Oberlies v. Searchmont Resort, Inc.*, 246 Mich. App. 424, 430, 633 N.W.2d 408, 413 (2001) (quoting *Transact, Random House Webster's College Dictionary* (1997)).

Section 2 of the Long Arm statute is more helpful to the plaintiff. It covers tortious acts that "caus[e] consequences to occur[] in the state," and it similarly has been interpreted expansively. *See* Mich. Comp. Laws § 600.705(2); *see Sullivan*, 79 F.4th at 668. "A plain language reading of these words reveals that *either* the tortious conduct *or* the injury must occur in Michigan." *Green*, 455 Mich. at 352, 565 N.W.2d at 817 (emphasis added). This language encompasses a defendant's "acts outside the state which have consequences inside the state." *Dornbos v. Kroger Co.*, 9 Mich. App. 515, 157 N.W.2d 498, 500 (1968) (interpreting analogous provision applicable to corporations). RWS alleges in its complaint that the defendants, presumably including Ahlers, made representations that were intentionally or negligently false,

which caused it tortious injury in Michigan. Assuming for the sake of argument that those allegations are correct, then perhaps the Long Arm statute's second provision may be satisfied.

B.

If the plaintiff shows that the state's Long Arm statute authorizes limited personal jurisdiction over a defendant, the Court then must evaluate the constitutional question: whether the Fourteenth Amendment's Due Process Clause constrains the "[s]tate's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 571 U.S. at 283. Limited personal jurisdiction, that is, "'[s]pecific' or 'case-linked' jurisdiction[,] 'depends on an affiliation between the forum and the underlyIng controversy.'" *Id.* at 283 n.6 (quoting *Goodyear*, 564 U.S. at 919). To satisfy the Due Process Clause, the Court must find that "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum State." *Id.* at 284. "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear*, 564 U.S. at 919). The Sixth Circuit historically has applied three criteria to guide this analysis, which it enunciated in *Southern Machine Company, Inc. v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach.*, 401 F.3d at 381.

1.

For specific, or limited, personal jurisdiction to attach, the defendant must engage in "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum

- 9 -

State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The object of this requirement is to ensure that jurisdiction is based on the party's own acts, not those of a third party, that is, the plaintiff, acting unilaterally. *Sullivan*, 79 F.4th at 671. The Sixth Circuit has emphasized that "'[i]t is the **quality** of [the] contacts,' and not their number or status, that determines whether they amount to purposeful availment." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (emphasis and alteration in original) (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994)).

The contact with the forum "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). The Supreme Court has explained that the contacts "must show that the defendant deliberately 'reached out beyond' its home — by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship *centered there*." *Id.* at 359 (emphasis added) (citing *Walden*, 571 U.S. at 285).

Ahlers insists that her contacts with Michigan do not establish that she availed herself of the Michigan forum because due process requires contacts to be based on more than the mere fact of the plaintiff's citizenship. She recalls that the Supreme Court's decision in *Walden v. Fiore* requires an analysis of her contacts with the state, "not the defendant's contacts with persons who reside there." 571 U.S. at 285. This statement is true, but her contacts with the plaintiff in this forum are not irrelevant because "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (internal quotation omitted).

All considered, though, the allegations in the complaint along with Ahlers's unrebutted declaration do not support a finding of purposeful availment. Consider the relevant jurisdictional facts: although Ahlers admits contacting RWS first, she sought only an appraisal of her business — not a merger or a business suitor. Decl. of Pamela Ahlers ¶ 9, ECF No. 6-1, PageID.103. The breakdown of the merger discussions is what gives rise to this complaint; and according to Ahlers, it was the plaintiff who initiated those conversations, a fact not expressly contradicted by the complaint or any other submission by the plaintiff. *Id.* ¶ 10; Compl. ¶¶ 12-14. This is important because the Sixth Circuit "has found that contacts lack quality when they are initiated by the plaintiff rather than the defendant, in part because '[t]he unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum.'" *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007) (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)).

The negotiations also are relevant to the inquiry. The plaintiff's complaint does not include allegations about where those dealings occurred, but Ahlers indicates that all of the substantive discussions happened either in Texas or electronically. Decl. of Pamela Ahlers ¶¶ 15, 20, ECF No. 6-1, PageID.104-05. However, the fact that these negotiations occurred outside Michigan, if true, is not dispositive. The Sixth Circuit has recognized that "[t]he acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action." *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001); *see also Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019) ("The reality that modern business often occurs electronically and by phone will not defeat personal jurisdiction."). Yet when other indicia suggest that the contacts were "random, fortuitous, and attenuated," these statements take on less force. *See Rice v. Karsch*,

154 F. App'x 454, 463-64 (6th Cir. 2005) ("Without more, in other words, 'choosing to deal' with others (that is, contracting with them) does not establish minimum contacts with their State.").

RWS argues that the subject of Ahlers's negotiations — the potential acquisition of her company — supports a finding of purposeful availment. As *Burger King* makes clear, the contents of the agreement affect the inquiry. If an agreement contemplates "continuing relationships and obligations with citizens of another state," it is a factor indicative of purposeful availment. *Burger King*, 471 U.S. at 473. Here, although the existence of a binding contract is disputed, the parties both admit to ultimately executing a Letter of Intent. Decl. of Pamela Ahlers ¶ 11; Resp., ECF No. 12, PageID.138. However, neither the allegations in the complaint nor a review of the Letter of Intent supports the conclusion that the parties anticipated that the deal would result in Ahlers having continuing relationships with the Michigan market. To the contrary, the letter appears to contemplate that RWS would have continuing relationships with Ahlers's Texas-based clientele and that Ahlers's role would be to facilitate the transition *there* for approximately 36 months. Letter of Intent, ECF No. 6-1, PageID.108. Neither the subject matter of the negotiations nor the negotiations themselves were "centered []here." *Ford Motor Co.*, 592 U.S. at 359.

That leaves Ahlers's visits to Michigan, which are pertinent because "physical entry into the State — either by the defendant in person or through an agent, goods, mail, or some other means — is certainly a relevant contact." *Walden*, 571 U.S. at 285. Ahlers argues that her visits to Michigan are not dispositive because they were brief, occurred out of an interest in seeing RWS's "business operations," and happened while the parties were subject to a "non-binding" Letter of Intent. That is not dispositive. However, more to the point, the Sixth Circuit has clarified that visits still must be connected to the forum and not merely the happenstance of the plaintiff's location there. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (emphasizing that

the defendant's visits occurred "solely because [the defendant] chose to be headquartered" in the forum state, "not because [the defendant] sought to further its business and create continuous and substantial consequences there") (quotation omitted); *Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018) (holding that the defendant, despite visiting the forum state at least once, was not subject to the court's jurisdiction there because the defendant's contacts resulted from the plaintiff's location there and not because the defendant sought the benefits and protections of that state's laws). If the subject of this lawsuit were a failure of the defendants to pay for the business appraisal for which they contacted RWS in Michigan, the analysis likely would be different. But it is the plaintiff that reached into the Texas forum with its offer to purchase a Texas-based business and take over its Texas-based clients that fuels this litigation. Any return contacts by the defendants to the Michigan-based plaintiff were, as the phrase goes, "random, isolated, [and] fortuitous." *Keeton*, 465 U.S. at 774.

The facts of another case decided by a judge in this district track remarkably close to the present matter. In *Premier Automation Contractors, Inc. v. Pinney*, No. 19-13712, 2020 WL 13577554 (E.D. Mich. Apr. 30, 2020), a California resident sold the assets of his company to a Michigan corporation. *Id.* at *1. The parties largely negotiated the sale electronically, but the defendant did travel to Michigan for two days to meet with the buyer's agents. *Ibid.* The acquired business remained in California and continued operations there. *Ibid.* Following the purchase, the plaintiff discovered that the defendant allegedly had concealed material changes to the condition of the business and therefore sought to bring breach of contract and fraudulent misrepresentation claims against him. *Ibid.* After thoroughly analyzing the relevant case law, the court found that the defendants had not purposefully availed themselves of Michigan because they had no ties to Michigan other than the contractual relationship, did not recruit Michigan customers, and

communicated with Michigan residents solely because the plaintiff chose to be headquartered there. *Id.* at *4-7.

The same can be said for the parties' relationships in this case. The complaint includes no allegations that suggest that Ahlers herself sought to operate in Michigan. The anticipated deal opened the door for RWS to operate in Texas and for Ahlers to eventually exit the combined business entirely. The plaintiff's jurisdictional argument ultimately is based on little more than on its status as an entity based here.

Citing a statement by the court of appeals in *Air Products & Controls, Inc. v. Safetech International, Inc.* that a defendant's decision to "conduct business with a company whose principal place of business it knew to be in Michigan" is a "deliberate conduct that amounts to purposeful availment," RWS argues that similar logic controls: Ahlers knew she was negotiating with a Michigan entity, therefore she availed herself of this forum. *Air Prod's*, 503 F.3d at 551. But far more critical to the court's decision there was the fact that the defendants "had a business relationship with Air Products lasting almost nine years in which they purchased goods cumulatively worth hundreds of thousands of dollars." *Ibid.* And were the court's language to be viewed as a rule that a defendant's knowledge of the plaintiff's headquarters location is sufficient for a finding of purposeful availment, it would be in tension with the Supreme Court's repeated admonition that the inquiry must be deeper than "the defendant's contacts with persons who reside" in a state. *Walden*, 571 U.S. at 285.

The record in this case does not support a finding that Ahlers took any action to purposely avail herself of the privilege of conducting business in a Michigan forum.

2.

Under the Due Process Clause, it is not enough that the defendants have contacts with the forum state; the plaintiff's claims also "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co.*, 592 U.S. at 359 (2021) (quotation omitted). "[T]his is a 'lenient standard,' requiring only that the cause of action have a 'substantial connection' to the defendant's activity in the state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 903 (6th Cir. 2017) (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002)). Nonetheless, as mentioned above, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S., at 262 (quoting *Goodyear*, 564 U.S., at 919).

This requirement is not satisfied here. The claims in this case focus on the breakdown in the parties' anticipated merger, the negotiations for which were initiated by the plaintiff's contact with the defendant in Texas and concerned the purchase of a Texas-based business. There is evidence in the case that RWS's representatives travelled to Texas to conduct their due diligence, but there is no evidence that any negotiations that could give rise to allegations of misrepresentations were made in or directed toward the Michigan forum.

3.

"The final requirement is 'whether exercising personal jurisdiction over [the defendant] would be reasonable, i.e., whether it would comport with traditional notions of fair play and substantial justice.'" *AlixPartners*, 836 F.3d at 552 (quoting *CompuServe*, 89 F.3d at 1267-68). Where "'the first two criteria are met . . . only the unusual case will not meet this third criterion.'" *Ibid.* (quoting *Theunissen*, 935 F.2d at 1461). But neither of the first two factors were met in this case.

There is no evidence in this record that the negotiations to purchase the defendants' business — initiated by RWS's unsolicited offer conveyed to the defendants in Texas — was a natural outgrowth of the defendants' request for a business appraisal. The scenario described by the complaint and Ahlers's declaration is that of a Michigan-based company encountering an opportunity to buy a Texas-based business and expand its operations into that state. It is not reasonable to require defendant Ahlers to litigate a case over the failed negotiations 1,000 miles from her home when none of the relevant activity took place in this forum.

III.

Although the plaintiff has a colorable argument that Michigan's Long Arm statute would allow it to proceed in this forum with its fraud-based claims against defendant Pamela Ahlers, requiring Ahlers to defend the action here would offend the Due Process Clause. The Court does not have personal jurisdiction over this defendant.

Accordingly, it is **ORDERED** that motion to dismiss by defendant Pamela Ahlers for want of personal jurisdiction (EFC No. 6) is **GRANTED**.

It is further **ORDERED** that the complaint against defendant Ahlers is **DISMISSED WITHOUT PREJUDICE**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: July 19, 2024